**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| LANEY MARIE GRINER and SAM GRINER, | No. 21-CV-4024 CJW-MAR |
| Plaintiffs, | **ORDER** |
| vs. | |
| STEVEN ARNOLD KING and KING FOR CONGRESS, | |
| Defendants. | |

_____

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................... 3

II.  BACKGROUND ................................................................................ 3

   A.  Factual Background ................................................................. 3

   B.  Procedural History ................................................................. 4

III.  APPLICABLE LAW ........................................................................ 4

   A.  Summary Judgment ................................................................ 4

   B.  Copyright Infringement ......................................................... 7

IV.  PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ............ 7

   A.  Copyright in the Photograph ................................................. 8

1

B.      Substantial Similarity .................................................................10

V.      DEFENDANTS' MOTION FOR SUMMARY JUDGMENT......................13

A.      Copyright Infringement Claims................................................13

1.      Defendant King's Personal Liability....................................14

2.      Copyright in the Photograph .............................................16

3.      Copyright Abandonment.................................................18

4.      Burden of Proof to Show Unauthorized Use .........................20

5.      Implied License .........................................................22

6.      Fair Use ..................................................................26

a.      Purpose and Character of the Use .............................27

b.      Nature of the Copyrighted Work ..............................28

c.      Amount and Substantiality of the Portion Used ..............29

d.      Effect of the Use Upon the Market............................30

B.      Invasion of Privacy Claim ....................................................31

1.      Subject Matter of Copyright .............................................32

2.      Equivalence to the Exclusive Rights of Copyright Law.............33

VI.     CONCLUSION .................................................................................37

# I.  INTRODUCTION

This matter is before the Court on plaintiffs' motion for partial summary judgment (Doc. 79) and defendants' motion for summary judgment (Doc. 80).  For the following reasons, the Court **denies** plaintiffs' motion for partial summary judgment (Doc. 79) and **denies-in-part** and **grants-in-part** defendants' motion for summary judgment (Doc. 80).

# II.  BACKGROUND

This case involves alleged infringements of a copyrighted photographic work and an unauthorized use of a person's likeness.  The Court will discuss additional facts and law as they become necessary to its analysis.

## A.  *Factual Background*

Plaintiffs Laney Marie Griner ("Laney") and Sam Griner ("Sam") are individuals residing in Jacksonville, Florida.  (*Id.*, at 2).  Plaintiff Laney owns the registered copyright in a photograph of plaintiff Sam (the "Subject Photograph") that formed the basis of a popular Internet meme titled "Success Kid."  (Doc. 79-2, at 1-2).  Plaintiff Laney licensed the Subject Photograph commercially to advertisers Vitamin Water and Virgin Mobile, among others.  (*Id.*).

Defendant Steven King ("King") is a former Congressman.  (Doc. 80-3, at 5). Defendant King for Congress ("Committee") is a campaign committee for defendant Steve King that owns and operates a website at www.steveking.com ("the website"), and posts various videos and pictures on the website to raise money from political donors for defendant King's campaign.  (*Id.*, at 2, 5).  Defendant Committee owns or controls the Facebook Page, a Twitter account, a Flickr account, a Winred page, and their own website.  (Doc. 79-3, at 115).

During Defendant King's campaign in 2020, defendant Committee used an independent contractor named Michael Stevens to create and circulate memes throughout

social media. (Doc. 80-3, at 6). Defendant King, Jeff King (the Campaign Manager), and Michael Stevens, are "involved in making or editing the Steve King pages[.]" (Doc. 79-3, at 116). Michael Stevens created a Meme Action Post ("the Post") incorporating part of the Subject Photograph. (Doc. 80-3, at 3). The Post places the image of plaintiff Sam on a different background than that of the Photograph. (*Id.*). The Post was displayed on a Winred, Inc. server and on defendant Committee's Facebook Page. (Docs. 80-3, at 3, 4, and 6; 79-3, at 3, at 106).

**B.    *Procedural History***

On December 30, 2020, plaintiffs filed a complaint against defendants Steven King, Committee, Winred, Inc., and Does 1–10 in the United States District Court for the District of Columbia. (Doc. 1). On April 7, 2021, plaintiffs filed an amended complaint naming the same defendants but including more factual allegations against all defendants. (Docs. 16; 17-1). On May 3, 2021, plaintiffs voluntarily dismissed claims against Winred, Inc. (Doc. 28). On May 17, 2021, the remaining defendants filed a first motion to dismiss for lack of personal jurisdiction and failure to state a claim, as well as a motion to transfer case. (Doc. 29). On June 2, 2021, both parties moved to transfer this matter to the Northern District of Iowa. (Doc. 32). On June 23, 2021, the case was so transferred. (Doc. 34). On July 21, 2021, defendants filed a second motion to dismiss for failure to state a claim. (Doc. 43). The Court **denied** that motion. (Doc. 57). Plaintiffs and defendants then filed cross motions for summary judgment. (Docs. 79; 80).

## III.    APPLICABLE LAW

**A.    *Summary Judgment***

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). More specifically, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). It is also genuine "when a reasonable jury could return a verdict for the nonmoving party on the question." *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*, at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of

the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. The opposing party may not then simply point to allegations made in her complaint but must identify and provide evidence of "specific facts creating a triable controversy." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) (internal quotation marks omitted). When considering a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). Even so, the moving party does not meet its burden by simply providing a massive record, and the Court "will not sort through a voluminous record in an effort to find support for the plaintiff's allegations." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004).

The moving party's burden of production turns on its burden of persuasion at trial. If the moving party bears the burden of persuasion on the relevant issue at trial, it must support its motion with credible evidence available under Rule 56(c) that would entitle it to a directed verdict if not challenged at trial. *Celotex Corp.*, 477 U.S. at 331; *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993). But, if the moving party does not bear the burden of persuasion at trial, it has two options to satisfy its Rule 56 burden of production. First, it may submit affirmative evidence that negates an essential element of the nonmoving party's claim. *Celotex Corp.*, 477 U.S. at 331 (1986); *see also Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018). Second, it may show that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Celotex Corp.*, 477 U.S. at 331 (1986); *see also Bedford*, 880 F.3d at 996.

Once the moving party meets its burden of production, the nonmoving party must go beyond the pleadings and show by depositions, affidavits, or other evidence "specific facts which create a genuine issue for trial." *See Mosley v. City of Northwoods*, 415

F.3d 908, 910 (8th Cir. 2005) (internal citation and quotation marks omitted). In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587–88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

### B. Copyright Infringement

To prove copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Taylor Corp. v. Four Seasons Greetings, L.L.C.*, 403 F.3d 958, 962–63 (8th Cir. 2005). The Court of Appeals for the Eighth Circuit addresses the ownership of a valid copyright before determining whether that copyright was infringed. *See Taylor Corp.*, 403 F.3d at 964; *Nucor Corp. v. Tennessee Forging Steel Serv., Inc.*, 476 F.2d 386, 389, 391–92 (8th Cir. 1973).

### IV. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs seek partial summary judgment on their claim for copyright infringement against defendants King and Committee. (Doc. 79-1, at 6). Plaintiffs, however, fail to meet their initial burden to show that they are entitled to judgment as a matter of law, because the question of substantial similarity in this dispute is a close question of fact. The Court therefore **denies** this motion.

7

Plaintiffs assert that plaintiff Laney owns a valid copyright in the Subject Photograph. (Doc. 79-1, at 9). Plaintiffs argue that plaintiff Laney is entitled to a presumption of an ownership of valid copyright in the Subject Photograph because plaintiff Laney registered the Subject Photograph in February 2012, within five years after its first publication. (*Id.*, at 10). Plaintiffs further argue that even absent the presumption, plaintiff Laney holds a valid copyright because she has authorship in the Subject Photograph and the Subject Photograph satisfies the "minimal standard" of originality requirement of copyright. (*Id.*). Plaintiffs then assert that defendants "admit that they copied [plaintiff Laney Griner's] Subject Photograph." (*Id.*, at 11). Plaintiffs further assert that this copying "satisfies both prongs of the Eighth Circuit's substantial similarity test." (*Id.*). Plaintiffs finally assert that defendants' Affirmative Defenses fail. (*Id.*, at 12). In all cases, plaintiffs do not differentiate between the liability of defendant King or defendant Committee.

Defendants resist, arguing first that "[defendant] Steve King is not an agent of King for Congress for purposes of the infringing acts." (Doc. 83, at 2). Specifically, defendants assert that King cannot be an agent "because none of the acts, other than an approval of an apology, can be ascribed to King." (*Id.*). Defendants then assert a defense of "unclean hands," asserting that plaintiff Laney Griner created the memes despite her saying that she did not create the memes. (*Id.*, at 4).

## A.    *Copyright in the Photograph*

As a preliminary matter, the Court finds that plaintiff Laney owns a valid copyright in the Subject Photograph. Specifically, the Court finds that plaintiffs have copyright in the specific image of Sam Griner in the Subject Photograph. Plaintiffs, however, have copyright only in the image of the Subject Photo, not in any image of Sam Griner that was taken at that location or that time.

8

As the Court noted in its previous Order, in the context of photographs, the image of a subject and the subject itself may both receive copyright protection, based on the originality of the photograph. *Mannion v. Coors Brewing Co.*, 377 F. Supp.2d 444, 452 (S.D.N.Y. 2005). A photograph may be original in three respects that are not mutually exclusive. *Id.* There may be originality in rendition, which resides "in such specialties as angle of shot, light and shade, exposure, effects achieved by means of filters, developing techniques etc." *Id.* (internal quotations omitted). To the extent a photograph is original in this way, "copyright protects not *what* is depicted, but rather *how* it is depicted." *Id.* (emphasis in original). There may be originality in timing, in which case the image that exhibits the originality, but not the underlying subject, qualifies for copyright protection. *Id.* at 453. There may also be originality in the creation of the subject if the author created "the scene or subject to be photographed." *Id.* (internal quotations omitted). In this case, a photograph may be original to the extent that the photographer created "the scene." *Id.* For example, electing and arranging the costume, draperies, and other various accessories in said photograph, arranging the subject so as to present graceful outlines, arranging and disposing the light and shade, suggesting and evoking the desired expression, and from such disposition, arrangement, or representation, made entirely by plaintiff, makes a photograph to be an original work of art. *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884).

When "a photograph is original [by] rendition or timing, copyright protects the image but does not prevent others from photographing the same object or scene." *Mannion*, 377 F. Supp.2d at 454. "By contrast, to the extent that a photograph is original in the creation of the subject, copyright extends also to that subject." *Id.* "Thus, an artist who arranges and then photographs a scene often will have the right to prevent others from duplicating that scene in a photograph or other medium." *Id.*

Here, plaintiff Laney never asserts that she "arranged and then photographed" the scene, so she would not be entitled to originality "in the creation of the subject." Plaintiffs do assert, however, that Laney Griner took "a photograph of her son . . . on August 26, 2007 (the 'Subject Photograph')[.]" (Doc. 79-2, at 1). The Court finds that this is sufficient to find originality in timing. Therefore, the Court finds that plaintiff Laney is entitled to copyright protection in the image of the Subject Photograph.

### B.    *Substantial Similarity*

Plaintiffs' motion, however, fails on the issue of substantial similarity. Plaintiffs argue that there is "no real dispute that [d]efendants copied the Subject Photograph[.]" (Doc. 79-1, at 11). Plaintiffs assert that defendants "admit that they copied Mrs. Griner's Subject Photograph." (Docs. 79-1, at 11; 79-2, at 2; 79-3, at 114). Plaintiffs then assert that defendants' Post was "substantially similar" to the Subject Photograph under the law of the Eighth Circuit. (*Id.*). Though defendants do not resist this argument, the Court finds that plaintiffs fail to meet their initial burden to show that no reasonable jury would find that there was no substantial similarity between the Subject Photograph and the Post.

A court can properly determine substantial similarity as a matter of law. *See Nelson v PRN Prods., Inc.*, 873 F.2d 1141, 1142 (8th Cir. 1989). Because substantial similarity "is a close question of fact, however, summary judgment has traditionally been frowned upon." *Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.*, No, 8:03CV527, 2006 WL 994566, at *3 (D. Neb. Jan. 27, 2006) (cleaned up)). When substantial similarity is the sole issue, summary judgment is appropriate "if the works are so dissimilar that 'reasonable minds could not differ as to the absence of substantial similarity in expression.'" *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117,

121 (8th Cir. 1987); *Design Basics, LLC v. Spahn & Rose Lumber Co.*, No. 19-CV-1015-CJW-MAR, 2021 WL 493415, at *7 (N.D. Iowa Feb. 10, 2021).

The Eighth Circuit Court of Appeals uses a two-step process to determine whether two works are substantially similar. *Hartman*, 833 F.2d at 120. The two-step process considers the substantial similarity "not only of the general ideas but of the expressions of those ideas as well." *Id.* First, "similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works." *Id.* The extrinsic test depends on objective criteria, such as "the type of artwork involved, the materials used, the subject matter, and the setting for the subject." *Nelson*, 873 F.2d at 1143 (citation omitted). Second, "if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Hartman*, 833 F.2d at 120. "Infringement of expression occurs only when the total concept and feel of the works in question are substantially similar." *Id.*

As plaintiffs note (Doc. 79-1, at 11), defendants do admit to copying the Subject Photograph. Specifically, "[d]efendant believes that Michael Stevens acquired the Subject Photograph from a Meme website, most likely ImgFlip or StickPNG." (Doc. 79-3, at 116). Defendants do not challenge this assertion. Therefore, the Court turns to whether this use was "substantially similar" to the original image.

The Court must first consider whether objective similarities in the details of the works show that the Subject Photograph and the Post are "substantially similar" in idea. If reasonable minds can differ on the absence of this issue, the Court cannot grant summary judgment. Again, the comparison here is between the *image* of Sam Griner holding sand on a beach and the Post that features the same image of Sam Griner, but in front of the Capitol. Here, a jury studying the Subject Photograph and the Post would

find one very prominent similarity—namely, plaintiff Sam Griner's once-youthful but grimacing visage with a hand raised that could be viewed as either holding something in his fist or raising his fist. Both works use the same visage at the same time, wearing the same clothing, in the same pose. (Doc. 1, at 4, 6). Further, both works feature that visage in the foreground. (*Id.*).

Reasonable minds, however, could also identify important differences between these works. The subject in the Subject Photograph is to the left of center, while the subject in the Post is to the right of center. (*Id.*). The subject in the Subject Photograph is larger in relation to the entire work than is the subject in the Post. (*Id.*). The backgrounds are entirely different, which could lead to different perceptions of Sam Griner's pose and grimace. (*Id.*). The Post includes text, where the Subject Photograph does not. (*Id.*). Altogether, a reasonable jury could find that these differences render the Post not "substantially similar" in ideas to the Subject Photograph.

If that jury found the Post was substantially similar in ideas to the Subject Photograph, that reasonable jury could find they were substantially similar in expression: the essence of the Subject Photograph is a boy with a fist grimacing, which is replicated in the Post. On the other hand, a reasonable jury could find that the photographs are dissimilar in expression because the background provides context which alters the perception of Sam Griner's pose and expression.

In the end, the Court finds that this is a very close call, not a certainty. Reasonable minds can differ on those questions, based on the record before the Court. Based on the record as cited by plaintiffs, the Court would not grant directed verdict on this question even if this evidence was not challenged. Therefore, plaintiffs have failed to show that no reasonable jury could find that the Subject Photograph and the Post are not "substantially similar" in ideas to the Subject Photograph. The Court, thus, will not

find as a matter of law that the Subject Photograph and the Post are "substantially similar in ideas."

For these reasons, the Court **denies** plaintiffs' motion for summary judgment of copyright infringement.[1]

## V. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Court **grants-in-part and denies-in-part** defendants' motion for summary judgment on both claims. (Doc. 80). Specifically, the Court **grants** defendants' motion for summary judgment on the copyright infringement claim against defendant King. The Court **denies** summary judgment on the copyright infringement claim against defendant Committee. The Court furthermore **denies** summary judgment on the invasion-of-privacy claim against both defendants.

### A. Copyright Infringement Claims

Again, to show copyright infringement, plaintiffs must first prove "'ownership of a valid copyright,'" and second, "'copying of original elements of the work.'" *Infogroup, Inc. v. Database, LLC*, 956 F.3d 1063, 1066 (8th Cir. 2020) (citing *Mulcahy v. Cheetah Learning, LLC*, 386 F.3d 849, 852 (8th Cir. 2004)). Defendants, as the party without the burden of proof at trial, must show affirmative evidence that negates an essential element of the nonmoving party's claim, or that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Celotex Corp.*, 477 U.S. at 331 (1986); *see also Bedford*, 880 F.3d at 996.

---

[1] Because the Court does not grant summary judgment that the Post is substantially similar to the Subject Photograph, it does not reach plaintiffs' arguments that defendants' affirmative defenses fail (Doc. 79-1, at 12–16). *See Teter v. Glass Onion, Inc.*, 723 F. Supp.2d 1138, 1146 (W.D. Mo. 2010). Similarly, it does not reach the arguments in defendants' resistance that concern defendant King's personal liability, nor the arguments that concern "unclean hands." (Doc. 83, at 3-5).

Defendants argue that defendant King is not an infringer. (Doc. 80-4, at 11-12). Defendants then argue that the Subject Photograph lacks sufficient authorship by Laney Griner to be copyrightable and that plaintiffs granted an implied license to use the work. (*Id.*, at 12 & 14). Defendants also argue Laney Griner abandoned her copyright in the Subject Photograph and that Laney Griner bears and fails to meet the burden of proving that defendants used an unlawful copy. (*Id.*, at 19 & 20). Finally, defendants argue that even if the Court were to find copyright infringement as a matter of law, defendants' use of the Subject Photograph amounted to fair use. (*Id.*, at 22).

### 1. *Defendant King's Personal Liability*

Defendants assert that defendant King cannot be liable for the acts of defendant Committee merely by acting as a member or as a manager. (Doc. 80-4, at 12). Defendants further assert that defendant King's only act in relationship to the acts of the Complaint involved his approval of apology language. (*Id.*). Plaintiffs assert that defendant King uploaded the Subject Photograph himself to his Twitter account. (Doc. 82, at 7). Plaintiffs also assert that defendant Committee was acting as King's agent when it posted the Subject Photograph without authorization. (*Id.*). For the following reasons, the Court **grants** summary judgment in favor of defendant King on this ground.

The Court finds that defendants meet their initial burden to show that defendant King was not personally liable for infringement. To show copyright infringement, plaintiffs must prove "ownership of a valid copyright," and second, "copying of original elements of the work." *Infogroup, Inc.*, 956 F.3d at 1066. Defendants asserted that "the only available evidence indicates that King had no association with any act of liability mentioned in the complaint," and that "King's only act in relationship to the acts of the Complaint involved his approval of apology language." (Doc. 80-4, at 12) (citing to Doc. 80-1, at 70–84). When deposed, defendant King stated he could not recall seeing

14

the Post before—specifically, he had "seen the face" of Sam Griner, but did not "recall the Capitol in the backdrop." (Doc. 80-1, at 84). Furthermore, defendant King did not discuss whether he posted the image, only his reaction to the notice letter and the drafting of the apology. (*Id.*, at 83). Defendant King later stated that his personal involvement in the Post was zero. (*Id.*, at 84). Separately, in an email exchange concerning the approval of apology language, no mention is made of defendant King uploading the Post, only that nobody knew the image was copyrighted. (*Id.*, at 71–77).

The Court does not reach plaintiffs' argument that defendant Committee was acting as King's agent when it posted the Subject Photograph without authorization (Doc. 82, at 7), because plaintiffs never pled this theory in the operative amended complaint. (Doc. 16). At this stage, plaintiffs may not amend their complaint without defendants' written consent or the Court's permission. FED. R. CIV. P. 15(a)(2). In such circumstances, a district court may reject a plaintiff's legal theory. *See Singleton v. Arkansas Hous. Authorities Prop. & Cas. Self-Insured Fund, Inc.*, 934 F.3d 830, 837 (8th Cir. 2019) (citing *Northern States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004); *see also* FED. R. CIV. P. 8(a)).

Here, plaintiffs alleged "that Defendants, and each of them, infringed the Subject Photograph by publishing and displaying the Infringing Photograph to the public, including without limitation, on www.steveking.com without authorization or consent." (Doc. 16, at 7). In resisting defendants' motion to dismiss (Doc. 43), plaintiffs asserted that "[t]he complaint alleges that King violated Plaintiffs' rights in his individual capacity, not as an agent for his campaign committee. Nowhere do Plaintiffs allege that King acted solely through King for Congress; King's liability is based on his own actions as alleged in the [operative complaint]." (Doc. 45, at 7). Nor did plaintiffs seek to amend

their complaint to plead this new theory. For these reasons, the Court does not consider this theory further.

Plaintiffs fail to show a genuine dispute of material fact as to whether defendant King uploaded the Post. Plaintiffs assert that defendant King uploaded the Post on his Twitter Page, and therefore bears personal liability. (Doc. 82, at 9). Plaintiffs, however, do not show this in the record. (Doc. 79-2, at 2). To be sure, the Statement of Undisputed Material Facts states that defendants King and Committee copied the Subject Photograph and posted the image of Sam Griner as part of a fundraising campaign on their Facebook page, Twitter account, King for Congress website and Winred.com. (Doc. 79-2, at 2) (citing Doc. 79-3, at 6, 101-104, 113-115 (Griner Decl., ¶ 9; Exhibits I, J and L (King for Congress Supplemental Interrogatory Responses, Resp. to Int. Nos. 1, 3 and 5))). But the evidence says otherwise. The Griner Declaration only indicates that Laney Griner saw the Post. (Doc. 79-3, at 8). Exhibit I only indicates that defendant Committee uploaded the Post on WinRed. (Doc. 79-3, at 104). Exhibit J indicates that defendant King's Facebook Page, @KingforCongress, displayed the Post. (Doc. 79-3, at 106). This was posted under Steve King's name, but not necessarily by Steve King himself, given the Twitter handle beneath. (*Id.*). Furthermore, Exhibit L, the King for Congress Supplemental Interrogatory Responses, contains answers by defendant Committee, not defendant King. (*Id.*, at 111–17).

For these reasons, plaintiffs fail to show any genuine dispute of material fact as to whether defendant King himself is not liable for copyright infringement. Therefore, defendant King is entitled to judgment of noninfringement as a matter of law.

### 2.    *Copyright in the Photograph*

Defendants argue that plaintiff Laney does not have copyright in the Subject Photograph. (Doc. 80-4, at 12). Specifically, defendants argue that at best only Sam

Griner has copyright in the photograph because only plaintiff Sam Griner made the decisions to pose himself. (*Id.*, at 12–14).[2] Plaintiffs resist, pointing to plaintiff Laney's 2012 copyright registration, and otherwise asserting that there is "no authority supporting the argument that a photographer in the right place at the right time is not the author of her work." (Doc. 82, at 10). For the following reasons, the Court rejects defendants' argument, and therefore **denies** summary judgment on this ground.

As explained above, the Court has already found that plaintiff Laney Griner has copyright in the image of the Subject Photograph. Furthermore, plaintiff Laney's copyright registration constitutes prima facie evidence of the validity of the copyright. The Photograph was first taken on August 26, 2007. (Doc. 80-3, at 4). Its copyright registration is dated February 22, 2012. (Doc. 79-3, at 80). Under Title 17, United States Code Section 410(c), "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate" and "[t]he evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."

Defendants' argument that Sam Griner was the only one acting with purpose sounds in originality-in-subject, but this argument is irrelevant. (Doc. 80-4, at 12). Because the Court has found that the Subject Photograph is original in timing, the purpose behind setting the scene does not matter. When a photograph is original by rendition or timing, copyright protects the image. *Mannion*, 377 F. Supp.2d at 453.

---

[2] To the extent that defendants argue that both Laney Griner and Sam Griner have copyright in the photograph as co-authors, this is irrelevant. Even if that were true, both Laney and Sam would have the exclusive rights in copyright promised in 17 U.S.C. § 106.

Defendants also assert that only Sam can be the author, not Laney. (Doc. 80-4, at 13). Defendants assert that the Supreme Court "award[ed] a copyright to the subject of the photograph rather than the photographer" in *Burrow-Giles Lithographic Co. v. Sarony*. (Doc. 80-4, at 13) (citing 111 U.S. 53, 54 (1884)). To be sure, defendants correctly note that a subject can be a co-author of a photograph, including "by selecting and arranging the subject matter, deciding on the composition and camera angles of the photograph, and determining the lighting as well as when to take the photograph." *Brod v. Gen. Pub. Grp., Inc.*, 32 F. App'x 231, 234 (9th Cir. 2002). This, however, does not mean that plaintiff Laney cannot be an author.

Therefore, defendants fail to meet their burden to show that Laney Griner is not entitled to copyright in the Subject Photograph. This is not a ground on which to grant judgment as a matter of law.

### 3. *Copyright Abandonment*

Defendants argue that plaintiff Laney abandoned her copyright in the Subject Photograph when she greeted infringements of her copyright with public excitement. (Doc. 80-4, at 19-20). Plaintiffs resist this argument, asserting that plaintiff Laney had registered her copyright and already negotiated and granted licenses for commercial uses of the Subject Photograph. (Doc. 82, at 17). For the following reasons, the Court finds that it is a triable issue of fact as to whether plaintiff Laney abandoned copyright in the Subject Photograph. Therefore, the Court will not grant judgment of noninfringement as a matter of law on this ground.

Courts have repeatedly held that an owner may abandon a copyright. The Eighth Circuit Court of Appeals has not held that an abandonment doctrine exists, but its component districts have held that copyright can be abandoned if there is both (1) an intent by the copyright owner to surrender the rights and (2) an overt act showing that

intent. *Johnson v. Salomon*, No. 4-73 Civ 536, 1977 WL 22758, at *30 (D. Minn. May 25, 1977); *Sw. Bell Tel. Co. v. Nationwide Indep. Directory Serv.*, 371 F. Supp. 900, 906 (W.D. Ark. 1974); *Rouse v. Walter & Assocs., L.L.C.*, 513 F. Supp.2d 1041, 1069 (S.D. Iowa 2007). The alleged infringer bears the burden to show that the copyright owner abandoned the copyright interest. *Doc's Dream, LLC v. Dolores Press, Inc.*, No. CV 15-2857-R, 2018 WL 11311292, at *3 (C.D. Cal. Mar. 1, 2018), aff'd, 766 F. App'x 467 (9th Cir. 2019).

Because copyright abandonment requires an overt act showing intent to surrender its rights, mere inaction cannot show an intent to surrender rights. *Johnson*, 1977 WL 22758, at *30. Allowing the public to make copies of the works alone is insufficient; instead, the dispositive issue is whether that act manifests the copyright holder's intent to abandon the copyright. *Doc's Dream, LLC*, 2018 WL 11311292, at *3.

Public statements can show an intent to abandon the copyright. *See, e.g., Melchizedek v. Holt*, 792 F. Supp.2d 1042, 1045, 1048 (D. Ariz. 2011); *Malibu Media, LLC v. Doe*, 381 F. Supp.3d 343, 353 (M.D. Pa. 2018). Courts have held, however, that conflicting public statements create a genuine dispute of material fact on the issue of copyright abandonment. *Furie v. Infowars, LLC*, 401 F. Supp.3d 952, 966 (C.D. Cal. 2019); *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp.3d 975 (C.D. Cal. 2015). Whether a plaintiff abandoned its copyright turns on the intent as shown by how the plaintiff's public statements should be interpreted. *Furie*, 401 F. Supp.3d at 966. At this stage, however, the Court can neither determine a plaintiff's intent nor place weight on the plaintiff's competing public statements. *Id.*

Here, defendants point to certain of plaintiff Laney's statements, for example: "[m]y picture was just out there for anyone to take and manipulate. I realized at that point, there was no getting this picture back, the Internet had it." (Docs. 80, at 14; 80-

1, at 25).   Defendants interpret this as an assertion by Laney that she had placed her picture "out there" with permission for anyone to take it, but it could also be interpreted as a lamentation that her photo was "out there" and people were taking it without her permission.   Within that same record, other public statements indicate Laney did not voluntarily place the photograph into the public domain.   For example, plaintiff Laney asserted on a Twitter reply: "[i]f someone wants to advertise with Success Kid, then pay me."   (Doc. 80-1, at 112).   She clarified on a Facebook reply: "There's nothing I could or would try to do when the poster isn't trying to profit from it or promote something dangerous."   (*Id.*, at 263).

Furthermore, as plaintiffs argue (Doc. 82, at 17), the cited record indicates that plaintiff Laney required licenses for commercial uses of the Subject Photograph from, at minimum, Jump In, a private use from an author, and a nuts company.   (Doc. 82-1, at 61-85.)   Plaintiffs also licensed the work pro bono.   (*Id.*, at 71).   And even when unsure of the eventual pricing for a license, plaintiffs sought to control the use of the Subject Photograph.   (*Id.*, at 73, 75, 81).   Furthermore, plaintiffs have engaged in settlement talks with various unauthorized users of the Subject Photograph.   (*See, e.g., id.*, at 88, 113).   Plaintiffs' cited record thus shows that there is a genuine dispute of material fact as to whether plaintiffs abandoned their copyright.

For these reasons, copyright abandonment is not a ground on which to grant summary judgment of noninfringement.

### 4.     Burden of Proof to Show Unauthorized Use

The Court rejects defendants' argument that plaintiff must show that defendants' use was unauthorized.   Defendants assert that plaintiffs, to show infringement, must prove that the copying was unauthorized.   (Doc. 80-4, at 20-21) (reciting Doc. 47, at 2).   Plaintiffs assert that defendants instead bear the burden to prove authorization.   (Doc.

82, at 18). For the same reasons that the Court rejected defendants' argument in its motion to dismiss (Doc. 57), the Court rejects this argument here.

The Supreme Court has held that to establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc.*, 499 U.S. at 361. The Supreme Court has also held that anyone "who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute or who makes a fair use of the work is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984).

The Court of Appeals for the Eighth Circuit does not require the plaintiff to prove that the use or copying was "unauthorized." Instead, the elements of copyright infringement of the reproduction right are (1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work. *Warner Bros. Ent., Inc. v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011) ("The elements of copyright infringement are (1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work."); *Taylor Corp.*, 403 F.3d at 962-63 ("To prevail on its copyright infringement claim, Taylor must prove ownership of a valid copyright and copying of original elements of the work."); *Mulcahy*, 386 F.3d at 852 ("Two elements are required to establish copyright infringement, ownership of a valid copyright and copying of original elements of the work.").

To be sure, the Eighth Circuit has held out as an example, but not a requirement, that the potential violation of the copyright owner's reproduction right be "unauthorized." *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1016 (8th Cir. 2020) ("To demonstrate copyright infringement, MPAY must show that it owned a valid copyright and that Appellees violated MPAY's copyright 'by, for example, unauthorized

reproduction and distribution of the copyrighted work.'"); *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 830 (8th Cir. 1992) (placing the burden of showing that reproduction and distribution was authorized on the accused infringer, not the copyright holder). Furthermore, the *MPAY* court examined the question of whether the accused infringers could demonstrate that their copying was authorized by agreement; it recognized that when the accused infringers "demonstrated that their copying, disclosure, and possession of the source code were authorized" by agreement, the plaintiff did not show "a likelihood of success on the merits of its copyright-infringement[.]" *MPAY Inc.*, 970 F.3d at 1019. The Court thus reads *MPAY* to place the burden of showing that the use was "authorized" on the accused infringers.

Under this precedent, "unauthorized" reproduction and distribution of the copyrighted work is not necessary to find a violation of plaintiffs' exclusive reproduction right. Therefore, the Court will not require plaintiffs to prove that defendants' copying of the Photograph was unauthorized. As defendants offer no other evidence to show that plaintiff cannot meet their burden of proof of copyright infringement, the Court cannot find that no reasonable jury would not find copyright infringement.

### 5. *Implied License*

Defendants argue that plaintiffs granted an implied license to the Internet or to Image Mass-Production Websites to use the Subject Photograph. (Doc. 80-4, at 14). Plaintiffs resist, arguing that the circumstances do not give rise to an implied license to defendants. (Doc. 82, at 12). For the following reasons, the Court finds that defendants have failed to show an implied license as a matter of law. Therefore, the Court **denies** defendants' motion for summary judgment of noninfringement on this ground.

Generally, a court can find an implied license "where the copyright holder engages in conduct from which [the] other [party] may properly infer that the owner consents to his use." *Field v. Google, Inc.*, 412 F. Supp.2d 1106, 1116 (D.Nev.2006) (quoting *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 241 (1927) (internal quotations omitted)) (alterations in original). Silence or lack of objection may also be the equivalent of a nonexclusive license, especially where the plaintiff knows of the defendant's use and encourages it. *See e.g., Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp.3d 898, 908 (E.D. Mo. 2015).

The Eighth Circuit has not provided a test on implied licenses, but other circuits have. "[T]he alleged infringers have the burden of establishing an implied license." *Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003). In *Bitmanagement Software GmBH v. United States*, the court held that "[w]hen the totality of the parties' conduct indicates an intent to grant such permission, the result is a legal nonexclusive license." 989 F.3d 938, 947 (Fed. Cir. 2021) (quoting *Lulirama Ltd. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997)). "As noted, an implied-in-fact license may be found only 'upon a meeting of the minds' that 'is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Bitmanagement Software GmBH*, 989 F.3d at 948 (quoting *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998)).

District courts in this Circuit apply similar analysis. In *Kennedy*, the court found an implied license when it examined email exchanges between the parties which made it clear that the accused infringer had begun infringing absent prior consent or payment, but that the copyright owner "never instructed" the accused infringer to stop. 143 F. Supp.3d at 908. The *Duncan* court found no implied license when the parties' prior communications gave no indication of consent or encouragement to use the copyright

holder's works. *Duncan v. Blackbird Prods. Grp., LLC*, No. 17-03404-CV, 2021 WL 7042880 *8 (W.D. Mo. March 03, 2021). Here, defendants have not shown any prior communication with plaintiffs indicating a tacit understanding that defendants could use the Subject Photograph. Meanwhile, plaintiffs have already shown prior licensing behavior for use as an advertisement. (Doc. 82-1, at 68–79).[3]

Defendants argue that plaintiffs granted an implied license to classes of users, so that any user within those classes could use the Subject Photograph without prior communication or a prior meeting of the minds with plaintiffs. (Doc. 80-4, at 15) (citing *Field,* 412 F. Supp.2d at 1116). The Court disagrees. As noted, an implied-in-fact license may be found only "upon a meeting of the minds" that "is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Bitmanagement Software GmBH,* 989 F.3d at 948. The *Bitmanagement* Court accepted as plausible for a meeting of the minds several communications between the plaintiff and the defendant. *Id.* Here, defendants did not show any facts suggesting a meeting of the minds between plaintiffs and defendants.

Defendants claim that the *Field* court found an implied license where a single accused infringer could reasonably interpret the copyright owner's conduct as the grant

---

[3] Defendants' reliance on the *Nelson-Salabes* test fails as well. (Doc. 80-4, at 14). That test, usually analyzed in the context of architectural works, identifies three factors to find an implied nonexclusive license: (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible. *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 516 (4th Cir. 2002). Even under this test, nothing in the record shows that plaintiffs and defendants engaged in any communication concerning the use of the Subject Photograph before defendants posted the advertisement, let alone any contemplation of an ongoing relationship, even though that same record shows previous licensing attempts with other people. (Doc. 82-1, at 68–79).

of a license to web crawlers, in general. (Doc., 80-4, at 15). That case does not support defendants' position. In *Field,* the court managed a dispute between a web site owner and Google's search engine. *Field*, 412 F. Supp.2d at 1110. The website owner put copyrighted material on his pages. *Id.* He knew he could instruct Google not to "cache" his website through use of a "no-archive" meta-tag, but he did not use that tag. *Id.* at 1114. Google then displayed cached links to his pages, and the copyrighted materials within, and in response, Field sued Google for copyright infringement in displaying those pages. *Id.* at 1110–14. The *Field* court found, however, that Field had implicitly licensed the work to Google, by choosing not to include the no-archive meta-tag that barred Google from caching his work. *Id.* at 1116. In doing so, the *Field* court applied the standard that "[a]n implied license can be found where the copyright holder engages in conduct "from which [the] other [party] may properly infer that the owner consents to his use." *Id.*

*Field*, therefore, does not stand for the proposition that the owner of a work can implicitly license her work to a whole class of users without a prior meeting of the minds. It did not find an implicit license to all web-crawlers. Instead, it found a meeting of the minds between the owner and Google specifically: that the copyright owner's conduct was "reasonably interpreted as the grant of a license to *Google* for that use" when he knew "how Google would use the copyrighted works he placed on those pages," and knew "that he could prevent such use[.]" *Id.* (emphasis added).

Furthermore, even were the Court to adopt defendants' legal theory, it would find that theory unsupported by the facts. In defendants' telling, plaintiff Laney Griner purportedly never used written contracts with social media users, and social media users knew that their uses of the Subject Photograph were permissible. (Doc. 80-4, at 16). This is factually erroneous, as the record shows that plaintiffs did require people who

found them on social media to pay for use of the Subject Photograph in advertisements. (Doc. 82-1, at 68–79).

Defendants also argue that plaintiffs granted an implied license to image mass-production websites. (Doc. 80-4, at 11). Even if the Court followed this legal theory, defendants fail to show how this implied license to image mass-production websites would grant a license to defendants, who are not an image mass-production website.

For these reasons, the Court finds that the implied license theory is not a ground on which to grant summary judgment of noninfringement.

### *6.* *Fair Use*

Defendants argue that this use constitutes fair use and is therefore not infringement. (Doc. 80-4, at 23). Plaintiffs resist, arguing that "[n]one of the 'fair use' factors . . . weigh in [d]efendants' favor." (Doc. 82, at 21). For the following reasons, the Court finds that defendants do not meet their initial burden to show fair use.

Title 17, United State Code § 107, sets forth four non-exclusive factors that "shall" be considered in determining whether an otherwise infringing use is a non-infringing fair use. *Mulcahy*, 386 F.3d at 854. The Court must consider:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2) the nature of the copyrighted work;
(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. Though the Court must consider all of these factors together, the "effect of the use upon the potential market for or value of the copyrighted work" is "undoubtedly the single most important element of fair use." *Mulcahy*, 386 F.3d at 854) (citing *Harper & Row Publishers, Inc., v. Nation Enters.*, 471 U.S. 539, 566 (1985)).

Fair use is a mixed question of law and fact. *Mulcahy*, 386 F.3d, at 855. Therefore, the Court may resolve this question on summary judgment if "a reasonable trier of fact could reach only one conclusion." *Antioch Co. v. Scrapbook Borders, Inc.*, 291 F. Supp.2d 980, 986 (D. Minn. 2003) (citing *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989)). Furthermore, the task of ascertaining a fair use "is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for a case-by-case analysis." *Id.*, at 987 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994)).

As explained above, the Court has not granted judgment as a matter of law that defendants infringed on plaintiffs' copyright in the Subject Photograph. It is not clear, therefore, that the Post is an "otherwise infringing work" for purposes of the fair use statute. Even if the Post constituted infringement of the copyright in the Subject Photograph, however, the Court would not grant judgment as a matter of law in favor of defendants on the ground of fair use.

### a.     *Purpose and Character of the Use*

The "purpose and character of the use" does not weigh in favor of a finding of fair use. The fact that a publication was commercial rather than nonprofit weighs against a finding of fair use. *Harper & Row*, 471 U.S. at 562. The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price. *Id.* In determining whether the use was commercial, the Court is "to be guided by the examples given in the preamble to Section 107, and should look to whether the use of the copyrighted material was for 'criticism, comment, news reporting, teaching, . . . scholarship, or research.'" *Antioch Co.*, 291 F. Supp.2d at 988 (collecting cases). This inquiry boils down to "whether and to what extent the new work

is 'transformative.'" *Id.* at 988 (citing *Campbell*, 510 U.S. at 579). A work is transformative if the fact-finder finds "real, substantial condensation of the materials" and "intellectual labor and judgment" in the creation of the work, rather than merely cutting out the essential parts of the original works. *Antioch Co.*, 291 F. Supp.2d at 988. To that end, if the use in question is "for the same intrinsic purpose" as the copyright holder's use, that use weakens the claim of fair use. *Id.* (internal quotations omitted).

Defendants appear to argue solely that the purpose of this use was to counter an unpopular political cause's lack of access to traditional media outlets by being interesting and catching attention through humorous appeals. (Doc. 80-4, at 22–23). Defendants, notably, make no claim in their motion that the use was "transformative." (*Id.*). Plaintiffs argue that the purpose of the use was "purely commercial" because it was part of a fundraising appeal to benefit defendant King's professional venture. (Doc. 82, at 22).

Here, defendants used the Subject Photograph to raise funds for defendant King. (Doc. 80-3, at 7). Furthermore, the Post included the request to "Fund Our Memes." (*Id.*, at 6). Defendants show no facts asserting that the use was transformative. (Doc. 80-4, at 22-23). For these reasons, defendants fail to show that this factor weighs in their favor.

### b.      *Nature of the Copyrighted Work*

The "nature of the copyrighted work" does not weigh in favor of a finding of fair use. A work being "functional in nature" generally points in the direction of fair use. *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021). Defendants assert that the Photograph, while ordinarily "worthy of protection" has accrued "functional aspects" that make it closer to less-protected types of copyrightable works. (Doc. 80-4, at 18).

Plaintiffs dispute this. (Doc. 82, at 22). "This factor recognizes that some types of works are closer to the core of intended copyright protection than others, so the scope of fair use is greater when informational as opposed to more creative works are involved." *Am. Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*, No. CIV. 12-528 RHK/JJK, 2013 WL 4666330, at *16 (D. Minn. Aug. 30, 2013) (internal quotations omitted). That court found works to be "factual or informational" when "[t]hey primarily communicate very technical information about the results of scientific research." *Id.* Other examples of functional works include instructions on how to donate online and a summary of potentially applicable European data laws. *Campbell*, 510 U.S. at 586; *Stewart v. Abend*, 495 U.S. 207, 237 (1990).

Here, the Court finds that the Subject Photograph is not functional. It includes no factual element. Defendants assert that "[b]ecause of the advent of the Meme as a way of conveying information and emotion, the Work has become a tool of sorts." (Doc. 80-4, at 23). Regardless of whether this argument has any merit, however, it does not apply because the original work in question—the Subject Photograph—is not a meme.

### c.  *Amount and Substantiality of the Portion Used*

"The amount and substantiality of the portion used" does not weight in favor of a finding of fair use. This factor questions whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 587 . In considering this factor, the Court looks at "the quantity and value of the materials used," while noting that "the extent of permissible copying varies with the purpose and character of the use." *Antioch Co.*, 291 F. Supp.2d at 995. Taking the "heart" of a work counsels against a finding of "fair use." *Campbell*, 510 U.S.at 587.

Defendants assert that the photograph only used "Sam and his gesture[,]" which was the only part "necessary to convey the emotion associated with the meme." (Doc. 80-4, at 23). Defendants acknowledge that this is the "heart" of the expression. (*Id.,* at 24). Defendants, however, assert that this "heart" of the Subject Photograph does not counsel against a finding of fair use, because it is the least creative portion of the work. (*Id.*). The Court rejects this argument: for the reasons above, the Court found originality in the Subject Photograph, including Sam Griner's image.

### d.    Effect of the Use Upon the Market

The "effect of the use upon the potential market for or value of the copyrighted work" factor does not weigh in favor of a finding of fair use. Again, though the Court must consider all of these factors together, this factor is "undoubtedly the single most important element of fair use." *Mulcahy*, 386 F.3d at 854 (citing *Harper & Row*, 471 U.S. at 566). Under this factor, a court must "consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." *Campbell*, 510 U.S., at 590 (quoting Nimmer § 13.05[A] [4], p. 13-102.61) (citations omitted); *Antioch Co.*, 291 F. Supp.2d at 996. The Court "must take account not only of harm to the original but also of harm to the market for derivative works." *Id.* When the copyright holder "demonstrat[es] an intent to exploit that market" created by the work, the Eighth Circuit found "genuine issues of material fact" that precluded summary judgment. *Mulcahy*, 386 F.3d at 854.

Defendants assert that the money they raised from the Post is outweighed by the money plaintiffs received from the Subject Photograph in total. (Doc. 80-4, at 24). The Court construes this as an argument that defendants' use of the Post caused very little

market harm. As plaintiffs note, however, the Court must consider both the extent of market harm by the particular actions, and the extent of market harm by unrestricted and widespread conduct of the sort that defendants engaged in. (Doc. 82, at 23). Defendants have not shown any facts describing or marginalizing the extent of market harm, beyond asserting that "[t]here never was much of a market for the Work itself[.]" (Doc. 80-4, at 24). Their argument and the facts supporting it, even if unchallenged at trial, would not be sufficient for the Court to grant directed verdict. Therefore, defendants fail to meet their initial burden on this ground.

For all of these reasons, the Court **denies** summary judgment of noninfringement on the ground of fair use.

### B.      *Invasion of Privacy Claim*

Defendants assert that plaintiffs' claim of invasion of privacy by attribution or appropriation is preempted by federal copyright law. (Doc. 80-4, at 22). Plaintiffs resist, arguing that Griner's right to protect his persona from a false implication of his endorsement of Steven King does not lie within the general scope of copyright and is thus not preempted. (Doc. 82, at 19–20). Plaintiffs also argue that Sam Griner has no copyright in the Subject Photograph, and therefore his state-law claim cannot be preempted by any federal copyright rights. (*Id.*, at 20). For the reasons discussed below, the Court finds that plaintiff Sam Griner's misappropriation claim is not preempted by federal copyright law. The Court thus **denies** summary judgment in favor of defendants on this claim.

The Copyright Act provides the exclusive source of protection for "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" of the Copyright Act. *See* 17 U.S.C. § 301(a). Concomitantly, all non-equivalent rights are not preempted. *Ray v. ESPN, Inc.*, 783

F.3d 1140, 1142 (8th Cir. 2015). A state cause of action is preempted if: "(1) the work at issue is within the subject matter of copyright as defined in §[§] 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106[ ]." *Id.* (citing *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993)); *Dryer v. Nat'l Football League*, 814 F.3d 938, 942 (8th Cir. 2016). If an extra element is "required, instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright' and there is no preemption." *Nat'l Car Rental Sys., Inc.*, 991 F.2d at 431.

### 1.    *Subject Matter of Copyright*

With regard to the "within the subject matter" requirement, the Copyright Act defines the subject matter of copyright generally as "original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.* at § 101. In this Circuit, even when the work is based off of a plaintiff's likeness, it will fall within the subject matter of copyright law. *Ray*, 783 F.3d at 1144; *but see Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001) ("A person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. § 102. This is true notwithstanding the fact that Appellants' names and likenesses are embodied in a copyrightable photograph."); *Brown v. Ames*, 201 F.3d 654,

658 (5th Cir. 2000) ("[T]he content of the right protected by the misappropriation tort does not fall into the subject matter of copyright.").

Here, as the Court found earlier, the Subject Photograph possesses originality in timing[4] and is "fixed in a tangible medium of expression" and could be "perceived, reproduced, or otherwise communicated." *Id.*, at § 101. Furthermore, under this Circuit's law, Sam Griner's likeness cannot be detached from the copyrighted work. Plaintiffs do not challenge defendants' use of Sam's likenesses or identities in any context other than the copyrighted Subject Photograph. *Dryer*, 814 F.3d at 942. Furthermore, nothing in the record shows that defendants posted images of Sam other than that embodied in the Photograph. The Subject Photograph, therefore, is within the subject matter of copyright law. *Id.*

## 2. *Equivalence to the Exclusive Rights of Copyright Law*

Plaintiff Sam's state-law claim, however, is not equivalent to the exclusive rights of copyright law. The Copyright Act gives copyright owners "exclusive rights to do and to authorize," among other things, the reproduction of "the copyrighted work in copies or phonorecords"; the preparation of "derivative works based upon the copyrighted work"; the distribution of "copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; and the display of certain "copyrighted work publicly." 17 U.S.C. § 106; *Ray*, 783 F.3d at 1144. If, however, the state-law cause of action requires an extra element "instead of or in addition to the acts of reproduction, performance, distribution or display," then "the right does

---

[4] The Court did not decide whether the Photograph possess originality in rendition.

not lie 'within the general scope of copyright' and there is no preemption." *Nat'l Car Rental Sys., Inc.*, 991 F.2d at 431.[5]

The Eighth Circuit has generated two tests to identify whether a state-law right is equivalent to the exclusive rights of copyright law. Defendants' preemption argument fails under either test.

In *Ray,* the court held that where the state-law rights have been "infringed by the mere act of reproduction, performance, distribution or display" of the work, they are equivalent to the exclusive rights within the general scope of copyright. 783 F.3d at 1144 (quoting *Nat'l Car Rental Sys., Inc.*, 991 F.2d at 431); *but see Downing*, 265 F.3d at 1005 ("Because the subject matter of the Appellants' statutory and common law right of publicity claims is their names and likenesses, which are not copyrightable, the claims are not equivalent to the exclusive rights contained in § 106."). In *Ray,* the court found that the state-law claim was merely an attempt to "prevent rebroadcast" of a copyrighted work, because there was no attempt to use the plaintiff's likeness or name in an advertisement without his permission to promote its products, and because plaintiff's likeness "could not be detached from the copyrighted performances that were contained in the films." *Ray*, 783 F.3d at 1144.

Here, plaintiffs' claim is for the branch of the "invasion of privacy" tort that prohibits the unauthorized use or misappropriation of Sam's likeness. (Doc. 82, at 19, n.7). Section 652A of the Restatement of Torts, adopted as Iowa law in *Winegard*, 260 N.W.2d at 822, states that the "right of privacy is invaded by. . . (b) appropriation of

---

[5] Contrary to plaintiffs' argument, the state-law rights can be equivalent even if the plaintiffs do not hold the copyright in the work at issue. *Dryer*, 814 F.3d at 943 (finding preemption when plaintiffs attempted to enforce their state-created right of publicity against a work copyrighted by defendant).

the other's name or likeness, as stated in § 652C." RESTATEMENT (SECOND) OF TORTS § 652A (AM. L. INST. 1977). Section 652C in turn states that "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." *Id.*, at § 652C. The common form of this invasion is the appropriation and use of a plaintiff's name or likeness to advertise a defendant's business or product, or for some "similar commercial purpose." *Id.* at § 652C cmt. b. The tort applies only when the name or likeness is published to appropriate "to the defendant's benefit the commercial or other values associated with the name or the likeness[.]" *Id.* at § 652C cmt. d. It does not apply to an "incidental use" of a plaintiff's name or likeness, such as a "mere mention" of his name or likeness, a reference to the plaintiff's name or likeness while legitimately discussing "his public activities," or a publication of his name or likeness for a purpose "other than taking advantage of the reputation, prestige, or other values associated with him." *Id.*

In sum, the tort of misappropriation requires more than an attempt to prevent the reproduction or distribution of the work. It applies "only when the name or likeness is published to appropriate "to the defendant's benefit the commercial or other values associated with the name or the likeness[.]" *Id.* For that reason, defendants fail to show federal preemption under *Ray*.

Later, in *Dryer v. Nat'l Football League*, the Eighth Circuit held that whether the federal copyright law preempts a state-law right turns on whether the state-law right challenges a commercial use of the work or a non-commercial use of the work. 814 F.3d 938, 943 (8th Cir. 2016). A right-of-publicity suit challenging the use of a copyrighted work in a commercial advertisement could have purposes unrelated to the aims of copyright law. *Id.* Meanwhile, if that suit "challenges the expressive, non-commercial use of a copyrighted work," it "asserts rights equivalent to 'exclusive rights

within the general scope of copyright' and is preempted by copyright law." *Id*. When deciding whether the speech was commercial speech that could not be preempted by the Copyright Act, the court applied three factors that govern whether speech is commercial rather than expressive: "(i) whether the communication is an advertisement, (ii) whether it refers to a specific product or service, and (iii) whether the speaker has an economic motivation for the speech." *Id*. (quoting *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1120 (8th Cir. 1999)).

Here, the Court finds that the Post is commercial for the following reasons. Though the Post itself only shows plaintiff Sam before the Capital beneath the text "Fund Our Memes," it appears next to the words "King for Congress." (Doc. 16, at 6). The Post itself does not refer specifically to defendant King or defendant Committee, but the Court gives this fact lesser weight, because the Post appears next to the words "King for Congress" and on websites controlled by defendant King and defendant Committee. (*Id*.). Finally, the speaker – defendant Committee – did have an economic motivation for the speech: to raise funds for defendant King. (*Id*.). Because the use of the copyrighted Subject Photograph was commercial in nature, the Copyright Act does not preempt plaintiffs' claim under *Dryer*.

Plaintiffs' resistance centers on tests adopted by other Circuits, which are not binding on this Court. (Doc. 82, at 20) (citing *Downing*, 265 F.3d 994; *Brown*, 201 F.3d 654 (holding that use of plaintiffs' names and likenesses to sell recorded music and posters violated plaintiffs' state law rights)). Because the Court resolves this issue on the law of this Circuit, it does not reach plaintiffs' arguments here.

## VI.    CONCLUSION

For these reasons, the Court **denies** plaintiffs' motion for partial summary judgment (Doc. 79) and **denies-in-part** and **grants-in-part** defendants' motion for summary judgment (Doc. 80).

**IT IS SO ORDERED** this 9th day of August, 2022.

_____
C.J.   Williams
United States District Judge
Northern District of Iowa