# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| LANEY MARIE GRINER and SAM GRINER, | No. 21-CV-4024 CJW-MAR |
| Plaintiffs, | **ORDER** |
| vs. | |
| STEVEN ARNOLD KING and KING FOR CONGRESS, | |
| Defendants. | |

_____

This matter is before the Court on plaintiffs' motion to reconsider the Court's order on parties' cross motions for summary judgment. (Doc. 89). Defendants timely resisted. (Doc. 94). Defendants also moved to strike plaintiffs' motion in part. (Doc. 93, at 3). For the following reasons, the Court **grants-in-part and denies-in-part** plaintiffs' motion to reconsider. (Doc. 89). The Court **denies as moot** defendants' motion to strike. (Doc. 93, at 3). As a result, the Court now **denies** defendants' motion for summary judgment in full. (Doc. 80). Count I is reinstated against defendant King.

## I. BACKGROUND

The Court incorporates the factual and procedural background as discussed in its prior order. (Doc. 86). In short, plaintiff Laney Griner owns the registered copyright in a photograph that features plaintiff Sam Griner (the "Subject Photograph"). (Doc. 79-2, at 1–2). The Photograph formed the basis of a popular Internet meme titled "Success Kid." (*Id.*). Defendants Steven Arnold King ("King") and King for Congress ("Committee") conducted a political campaign in 2020, during which defendant Committee used an independent contractor named Michael Stevens to create and circulate

1

memes. (Doc. 80-3, at 6). Michael Stevens posted a Meme Action Post ("the Post") incorporating part of the Subject Photograph. (*Id.*, at 3).

Plaintiffs sued defendants, asserting in relevant part here that the Post violated plaintiff Laney Griner's copyright in the Subject Photograph. (Docs. 16; 17-1). Both parties moved for summary judgment on various issues in this case. (Docs. 79 & 80). The Court partially granted defendants' motion for summary judgment of copyright noninfringement with regards to defendant King, finding that defendant King could not be liable for infringement on these facts as pled, but otherwise denied summary judgment. (Doc. 86, at 16). The Court denied plaintiffs' motion for summary judgment of copyright infringement, finding genuine disputes of material fact as to the issue of infringement and declining to prematurely enter judgment on defendants' affirmative defenses. (*Id.*, at 13 & n.1). Plaintiffs now move to reconsider (1) the Court's granting of summary judgment in favor of defendant King on the claim of copyright infringement, and (2) the Court's refusal to rule on plaintiffs' motion to adjudicate defendants' affirmative defenses. (Doc. 89).

## II. *LEGAL STANDARD*

"The Federal Rules of Civil Procedure do not mention motions for reconsideration." *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999). Depending on the circumstances, motions for reconsideration may be properly analyzed under Rule 60(b) or other Rules. *Karg v. Transamerica Corp.*, No. 18-CV-134-CJW-KEM, 2019 WL 9093998, at *2 (N.D. Iowa Nov. 7, 2019). Here, plaintiffs bring this motion solely under Federal Rules 60 and 56 (Doc. 89-1), and provide no argument under any other standard, so the Court will only analyze this motion under those Rules.

Rule 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding." FED. R. CIV. P. 60(b). Although Rule 60(b) references "final" orders, the Eighth Circuit Court of Appeals has held that motions

2

for reconsideration can be understood as "Rule 60(b) motions when directed at non-final orders.'" *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006) (quoting *Anderson v. Raymond Corp.*, 340 F.3d 520, 525 (8th Cir. 2003)). "Rule 60(b) provides for extraordinary relief, which may be granted only upon a showing of exceptional circumstances." *Mitchell v. Shalala*, 48 F.3d 1039, 1041 (8th Cir. 1995) (citing *Atkinson v. Prudential Ins. Co.*, 43 F.3d 367, 371 (8th Cir. 1994)).

Plaintiffs do not specify under which subsection of Rule 60(b) they seek relief. Under Rule 60(b), a movant must base their motion on one of the specific grounds listed in Rule 60(b); the movant cannot make a general plea for relief. FED. R. CIV. P. 60(b); *United States v. Deutsch*, 981 F.2d 299, 301-302 (7th Cir. 1992). Rule 60(b) provides five specific circumstances under which the Court can grant relief, as well as a sixth catch-all category. "The provisions of Rule 60(b) are mutually exclusive, and if the reason offered for relief falls under on[e] of the more specific subsections of Rule 60(b)(1)-(5), the reason will not justify relief under the catch-all provision of 60(b)(6)." *Fuller v. United States*, No. 4:07-CV-34 CAS, 2013 WL 3480303, at *8 (E.D. Mo. July 10, 2013) (citing *Liljeberg v. Health Servs. Corp.*, 486 U.S. 847, 863 n.11 (1988)).

Plaintiffs identify an alleged judicial mistake when the Court granted partial summary judgment in favor of defendant. (Doc. 89-1, at 3). For that argument, then, the Court finds, based on plaintiffs' statement, that this motion for reconsideration is based upon Rule 60(b)(1). Rule 60(b)(1) allows the Court to provide a party relief from an order or judgment resulting from "mistake, inadvertence, surprise, or excusable neglect." "Mistake" now includes errors of law. *Kemp v. United States*, 142 S. Ct. 1856, 1861-62 (2022).

It is unclear under what authority plaintiffs move to reconsider the Court's refusal to adjudicate defendants' affirmative defenses on plaintiffs' motion for summary judgment. (Doc. 89-1, at 7). At best, plaintiffs appear to assert that this too was a

3

judicial mistake.   (*Id.*).   For that reason, the Court will construe this argument as based on Rule 60(b)(1) as well.

## III.   DISCUSSION

### A.   Defendant King's Personal Liability

Plaintiffs assert that the Court "erred in granting summary judgment in favor of Steve King because the evidence supported a theory of liability pled in the First Amended Complaint."   (Doc. 89-1, at 2).   For the following reasons, the Court agrees.

In its motion for summary judgment (Doc. 80), defendants asserted that defendant King could not be liable for the acts of defendant King for Congress ("defendant Committee") merely by acting as a member or a manager.   (Doc. 80-4, at 12). Defendants further asserted that defendant King's only act in relationship to the acts of the Complaint involved his approval of apology language.   (*Id.*).   In resistance, plaintiffs asserted that defendant King uploaded the image at issue ("Subject Photograph") himself to his Twitter account.   (Doc. 82, at 7).   Plaintiffs also asserted that defendant Committee was acting as King's agent when it posted the Subject Photograph without authorization.   (*Id.*).

In granting summary judgment for defendant King, the Court found that the evidence did not suggest that defendant King personally uploaded the Subject Photograph himself to his Twitter account.   (Doc. 86, at 16).   Furthermore, the Court did not reach plaintiffs' argument that defendant Committee was acting as defendant King's agent when it posted the allegedly-infringing Post without authorization (Doc. 82, at 7-9), because it found that plaintiffs never pled this agency theory in the operative amended complaint. (Doc. 86, at 15 (discussing Doc. 16)).

For the following reasons, the Court now finds that plaintiffs did plead this agency theory.   After considering this theory on the merits, the Court finds that a reasonable

4

jury could find that defendant Committee was acting as defendant King's agent when it used Michael Stevens to upload Memes, including the Post.

### 1.    *Reconsidering the Pleadings*

The Court recognized that plaintiffs alleged "that Defendants, and each of them, infringed the Subject Photograph by publishing and displaying the Infringing Photograph to the public, including without limitation, on www.steveking.com without authorization or consent."  (Doc. 86, at 15 (quoting Doc. 16, at 7)).  The Court also recognized that in resisting defendants' motion to dismiss (Doc. 43), plaintiffs asserted that "[t]he complaint alleges that King violated Plaintiffs' rights in his individual capacity, not as an agent for his campaign committee.  Nowhere do Plaintiffs allege that King acted solely through King for Congress; King's liability is based on his own actions as alleged in the [operative complaint]."  (Doc. 86, at 15 (quoting Doc. 45, at 7)).

As plaintiffs note in this motion, however, they also pled in the First Amended Complaint that "each of the [d]efendants was the . . . principal . . . and/or employee of the remaining [d]efendants and at all times had control over the content displayed on the website, acting within the scope of such agency. . . and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conducts alleged[.]"  (Doc. 16, at 3).

Reading all of this in conjunction, the Court concludes that its prior finding that plaintiffs never pled the agency theory was a mistake.  For that reason, the Court now reaches the merits of this argument, as it pertains to resisting defendants' motion for summary judgment.  (Doc. 80).  Because a reasonable jury could find the defendant Committee liable for copyright infringement, the Court must decide whether a reasonable jury could find defendant King liable for defendant Committee's purported copyright infringement because defendant Committee's infringing actions were performed on defendant King's behalf and under his control.

5

## 2. Law of Unincorporated Nonprofit Associations

Under Iowa law, an unincorporated nonprofit association is "an unincorporated organization consisting of two or more members joined under an agreement that is oral, in a record, or implied from conduct, for one or more common, nonprofit purposes." IOWA CODE § 501B.2. Subject to certain exceptions, Iowa law governs the operation in Iowa of all unincorporated nonprofit associations formed or operating in Iowa. IOWA CODE § 501B.4.

"An unincorporated nonprofit association is a legal entity distinct from its members and managers." IOWA CODE § 501B.5(1). Therefore, "[a]n unincorporated nonprofit association may sue or be sued in its own name." IOWA CODE § 501B.9. Furthermore, "[a]n action or proceeding against an unincorporated nonprofit association does not abate merely because of a change in its members or managers." IOWA CODE § 501B.13.

In this vein, Iowa law limits the liability of members of the association itself. Section 501B.8 of the Iowa Code provides in relevant part:

> 1. For a debt, obligation, or other liability of an unincorporated nonprofit association, whether arising in contract, tort, or otherwise, all of the following apply:
>
> a. It is solely the debt, obligation, or other liability of the association.
>
> b. It does not become a debt, obligation, or other liability of a member, manager, employee, or volunteer solely because the member acts as a member, the manager acts as a manager, the employee acts as an employee, or a volunteer acts as a volunteer.
>
> 2. A person's status as a member, manager, employee, or volunteer does not prevent or restrict law other than this chapter from imposing liability on the person or the association because of the person's conduct.

In short, a member or manager does not assume the liability of the unincorporated nonprofit association solely because they act as a member or a manager. § 501B.8.

6

The text of the statute, however, does not preclude the member or manager assuming the liability of the association for other reasons, though there is a dearth of caselaw concerning members assuming liability for the association's conduct. Therefore, at this stage and considering the caution with which trial courts must grant summary judgment, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the Court concludes that the liability of an unincorporated association can become the liability of a member for reasons other than that member's membership status.

### 3. *Law on Principal–Agency Relationship*

The party asserting an agency relationship must prove its existence by a preponderance of the evidence. *Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 100 (Iowa 2011); *Chariton Feed & Grain, Inc. v. Harder*, 369 N.W.2d 777, 789 (Iowa 1985); *Dailey v. Holiday Distrib. Corp.*, 260 Iowa 859, 868 (1967).

"Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01 (AM. L. INST. 2006); *see Soults Farms*, 797 N.W.2d at 100; *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 575 (Iowa 2017). An agency relationship can be established through the agent's actual or apparent authority to act on behalf of the principal. *See Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 493 (Iowa 2000); *Fed. Land Bank of Omaha v. Union Bank & Trust Co. of Ottumwa*, 290 N.W. 512, 514–15 (1940).

Agency law limits the scope of the agency relationship to cases where the agent is acting on the principal's behalf. *Soults Farms*, 797 N.W.2d at 100; *See* RESTATEMENT (THIRD) OF AGENCY § 1.01 (cmt. c) (AM. L. INST. 2006). Conversely, when the agent is not transacting on behalf of the principal, the principal is not liable for the agent's transactions. *Soults Farms*, 797 N.W.2d at 100–101. The agent need not expressly

7

Case 5:21-cv-04024-CJW-MAR   Document 96   Filed 09/15/22   Page 7 of 16

intend his actions to bind the principal. *Id.*, at 100 (citing RESTATEMENT (THIRD) OF AGENCY § 1.03 (cmt. b) (AM. L. INST. 2006). Instead, a finding of agency turns upon principal and agent manifestations of assent, which are derived from "written or spoken words or other conduct," evaluated in context, and "often . . . inferred from surrounding facts and circumstances." *Id.* (first quoting RESTATEMENT (THIRD) OF AGENCY § 1.03 (AM. L. INST. 2006); second quoting RESTATEMENT (THIRD) OF AGENCY § 1.03 (cmt. e) (AM. L. INST. 2006)). "For example, an agent can manifest assent to act on the principal's behalf merely by performing actions the principal has empowered the agent to perform," *Id.* (citing RESTATEMENT (THIRD) OF AGENCY § 1.03 (cmt. d) (AM. L. INST. 2006)), or "by carrying out actions that objectively benefit the principal." *Id.* (citing RESTATEMENT (THIRD) OF AGENCY § 1.03 (AM. L. INST. 2006)).

A principal is subject to direct liability to a third party harmed by an agent's conduct in three ways. First, when the agent "acts with actual authority or the principal ratifies the agent's conduct" and either the agent's conduct "is tortious" or the agent's conduct, "if that of the principal, would subject the principal to tort liability." RESTATEMENT (THIRD) OF AGENCY § 7.03(1)(a) (AM. L. INST. 2006). Second, when the principal "is negligent in selecting, supervising, or otherwise controlling the agent." RESTATEMENT (THIRD) OF AGENCY § 7.03(1)(b) (AM. L. INST. 2006). And third, when the principal "delegates performance of a duty to use care to protect other persons or their property to an agent who fails to perform the duty." RESTATEMENT (THIRD) OF AGENCY § 7.03(1)(c) (AM. L. INST. 2006).

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01 (AM. L. INST. 2006). This actual authority is limited to taking actions "designated or implied in the principal's manifestations to the

8

agent and acts necessary or incidental to achieving the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives when the agent determines how to act." RESTATEMENT (THIRD) OF AGENCY § 2.02 (AM. L. INST. 2006). The reasonableness of the agent's interpretation of the principal's manifestations and objectives are questions of fact. RESTATEMENT (THIRD) OF AGENCY § 2.02 (cmt. c) (AM. L. INST. 2006).

Furthermore, a principal is subject to vicarious liability to a third party harmed by an agent's conduct in two ways. First, when the agent "is an employee who commits a tort while acting within the scope of employment." RESTATEMENT (THIRD) OF AGENCY § 7.03(2)(a) (AM. L. INST. 2006). Second, when the agent "commits a tort when acting with apparent authority in dealing with a third party on or purportedly on behalf of the principal." RESTATEMENT (THIRD) OF AGENCY § 7.03(2)(b) (AM. L. INST. 2006). An agent or other actor acts with apparent authority "to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." RESTATEMENT (THIRD) OF AGENCY § 2.03 (AM. L. INST. 2006).

### 4. Analysis

The Court turns to the merits of plaintiffs' agency theory, that defendant Committee was acting as defendant King's agent when it used Michael Stevens to upload Memes, including the allegedly-infringing Post. (Doc. 82, at 7). Because the Court found that no reasonable jury would find defendant King uploaded the Subject Photograph himself, (Doc. 86, at 16), plaintiffs' copyright claim against defendant King can survive summary judgment only if plaintiffs show a genuine dispute of material fact as to whether defendant King is liable under the agency theory. For the follow reasons, the Court finds plaintiffs show such a genuine dispute of material fact.

9

As a preliminary matter, defendants' argument that defendant King is not liable for defendant Committee's conduct solely because the member acts as a member or the manager acts as a manager is accurate, but not dispositive. (Doc. 80-4, at 12). It is true that defendant Committee's "liability does not become a . . . liability of a member [or] manager . . . solely because the member acts as a member [or] the manager acts as a manager." IOWA CODE § 501B.8. Plaintiffs pled, however, that defendant King is liable not because he is a member of defendant Committee, but because defendant Committee acted as defendant King's agent. (*See* Doc. 16, at 3). The Court finds that a reasonable jury could find defendant Committee was an agent of defendant King, and that any liability for defendant Committee's conduct would apply to defendant King.

Again, an agency relationship arises when a principal manifests assent to an agent that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act. RESTATEMENT (THIRD) OF AGENCY § 1.01 (AM. L. INST. 2006); *Soults Farms*, 797 N.W.2d at 100. These manifestations of assent come from "written or spoken words or other conduct," evaluated in context, and "often . . . inferred from surrounding facts and circumstances." *Id.* (quotations omitted). "For example, an agent can manifest assent to act on the principal's behalf merely by performing actions the principal has empowered the agent to perform," *Id.* (citing RESTATEMENT (THIRD) OF AGENCY § 1.03 (cmt. d) (AM. L. INST. 2006)), or "by carrying out actions that objectively benefit the principal." *Id.* (citing RESTATEMENT (THIRD) OF AGENCY § 1.03 (AM. L. INST. 2006)).

From this record, a reasonable jury could find defendant King manifested assent that defendant Committee shall act on his behalf. Defendant King registered defendant Committee with the Federal Election Commission as a principal campaign committee. (Docs. 80-1, at 48; 80-3, at 5).

10

Though it is a closer call, a reasonable jury could also find defendant King manifested assent that defendant Committee act under his control. Defendant King testified that he does not manage defendant Committee day-to-day, and "[t]here wasn't a requirement for [him] to do anything except a request for a quasi-apology to approve the language in [the Post.]" (Doc. 80-1, at 82–83). Defendant King, however, also testified that he would have to go case by case to recall any actions that he had to approve, but that most of his approvals concerned quotes that were attributed to him. (*Id.*, at 92).

A reasonable jury could also find defendant Committee manifested assent to act on defendant King's behalf by carrying out actions that objectively benefit the principal. Again, defendant Committee supported the candidacy of defendant King. (Docs. 80-1, at 48; 80-3, at 5). Defendant Committee used Michael Stevens to assist in unconventional marketing, including the creation and circulation of Memes throughout social media in support of defendant King's campaign. (Doc. 80-1, at 52, 55). Defendant Jeff King (the Campaign Manager) identified Michael Stevens as taking care of and creating the content for most of defendant Committee's online presence. (Doc. 82-1, at 17). Defendant King, Jeff King (the Campaign Manager), and Michael Stevens, were "involved in making or editing the Steve King pages[.]" (Doc. 79-3, at 116). Michael Stevens was "on regular compensation" rather than "paid per job or project[.]" (Doc. 79-3, at 34). Together, Michael Stevens and defendant Committee carried out actions that objectively benefited defendant King, by engaging in marketing to support defendant King.[1] (*See* Doc. 82-1, at 17).

A reasonable jury could also find defendant Committee manifested assent to act under defendant King's control. Again, defendant King testified that he would have to go case by case to recall any actions that he had to approve, but that most of his approvals

---

[1] The Court makes no inference from defendant King's funding of defendant Committee for this litigation. (*See* Doc. 82, at 9).

concerned quotes that were attributed to him. (*Id.*, at 92). Furthermore, the Committee asked for defendant King's approval on at least one communication. (Doc. 80-1, at 77).

The Court also finds that, if the jury finds defendant Committee infringed on plaintiff Laney Griner's copyright, it could find defendant King was subject to direct liability to plaintiff Laney Griner for defendant Committee's conduct. Again, a principal is subject to direct liability for an agent's conduct when the agent "acts with actual authority or the principal ratifies the agent's conduct" and either the agent's conduct "is tortious" or the agent's conduct, "if that of the principal, would subject the principal to tort liability." RESTATEMENT (THIRD) OF AGENCY § 7.03(1)(a) (AM. L. INST. 2006).[2] The agent acts "with actual authority" when at the time of the conduct the agent reasonably believes, based off the principal's manifestations to the agent, that the principal wants the agent to take this action. "RESTATEMENT (THIRD) OF AGENCY § 2.01 (AM. L. INST. 2006). 2006). The reasonableness of the agent's interpretation of the principal's manifestations and objectives are questions of fact. RESTATEMENT (THIRD) OF AGENCY § 2.02 (cmt. c) (AM. L. INST. 2006).

Here, the record does not indicate that defendant King ratified the upload of the Post. Therefore, assuming that the conduct is found to be tortious, the question becomes whether the purported agent—defendant King for Congress—acted with actual authority when it used Michael Stevens to upload memes, including the allegedly-infringing Post. This turns on whether defendant Committee reasonably believed in accordance with defendant King's manifestations to it that uploading memes, including the allegedly-infringing Post was something necessary or incidental to achieving defendant King's objectives.

---

[2] No party raises arguments about negligence in "selecting, supervising, or otherwise controlling the agent" or about delegating any performance. RESTATEMENT (THIRD) OF AGENCY § 7.03(1)(b) (AM. L. INST. 2006).

12

A reasonable jury could find it was. Defendant King's campaign required fundraising, like every other candidate for office. Defendant Committee was formed to serve as defendant King's campaign committee. That Committee used Michael Stevens more than once to assist in marketing, including using Memes. (Doc. 80-1, at 52, 55). A reasonable jury could find the post using the Subject Photograph was designed to raise funds; the Post itself states "Fund our Memes," (Doc. 80-3, at 3), and the record indicates that some money was raised from this post. (Docs. 80-3, at 7; 80-1, at 69). For those reasons, a reasonable jury could find defendant Committee acted with actual authority when it used Michael Stevens to upload Memes—including the Post—on behalf of defendant King, and for that reason that defendant King is directly liable for defendant Committee. Therefore, summary judgment of noninfringement in favor of defendant King is not appropriate.

For these reasons, then, the Court **reverses** its prior grant of summary judgment of noninfringement for defendant King, and **reinstates** Count I against defendant King.[3]

### B. *Declining to Resolve Defendants' Affirmative Defenses on Plaintiffs' Motion*

Plaintiffs also move for the Court to find that defendants' affirmative defenses fail, even though the Court had declined to grant judgment as a matter of law in favor of plaintiffs on their copyright infringement claim. (Doc. 89-1, at 7). Because the Court did not grant summary judgment that the Post is substantially similar to the Subject Photograph, it did not reach plaintiffs' arguments that defendants' affirmative defenses fail. (Doc. 86, at 13 & n.1). It is unclear under what authority or standard plaintiffs

---

[3] Accordingly, the Court does not reach plaintiffs' alternative request for leave to file their proposed Second Amended Complaint and **denies** that motion. (Docs. 89, at 1; 89-1, at 4–6). For that reason, too, the Court **denies as moot** defendants' motion to strike plaintiffs' request for leave to file their proposed Second Amended Complaint. (Doc. 93, at 3).

13

request this. Nevertheless, the Court addresses plaintiffs' request, and maintains its decision.

Trial courts must act with caution in granting summary judgment. *Anderson*, 477 U.S. at 255. A court reaches affirmative defenses after finding that the plaintiff established the required element of their claim. *Jacobsen v. Rensink*, No. C96- 4074-PAZ, 1998 WL 35240791, at \*5 (N.D. Iowa July 7, 1998) (reaching defendant's affirmative defense only after finding that plaintiff "established the two required elements of his claim"); *Teter v. Glass Onion, Inc.* 723 F. Supp. 2d 1138, 1146 (W.D. Mo. 2010) (reaching defendant's affirmative defenses only after finding plaintiff and copyright owner "established a claim for copyright infringement"). A court cannot properly reach those defenses if the plaintiff is not entitled to summary judgment on its claims. *Liquid Cap. Exch., Inc. v. BDC Grp., Inc.*, No. 20-CV-89 CJW-MAR, 2021 WL 6144654, at \*12 (N.D. Iowa Nov. 19, 2021).

Plaintiffs' cited precedent for the proposition that "[w]here a defendant fails to offer evidence in support of its affirmative defenses, the court may dismiss them on summary judgment," are distinguishable. (Doc. 89-1, at 7). In *Spann v. Lombardi,* the Eighth Circuit Court of Appeals held that the "district court d[id] not abuse its discretion by declining to address an argument for summary judgment that is not properly briefed." 960 F.3d 1085, 1088 (8th Cir. 2020). Briefing was not the concern here. Furthermore, in *CRST Expedited, Inc. v. JB Hunt Transp., Inc.*, the Court denied the defendant's motion to dismiss where defendant, as the movant, failed to meet its burden. No. 17-CV-26 CJW, No. 17-CV-24 CJW, 2018 WL 2768874, at \*8 (N.D. Iowa June 8, 2018). Here, plaintiffs moved for summary judgment on their own claim, and the Court already held that they failed to meet their burden for summary judgment. (Doc. 86, at 13).

In support of their motion, plaintiffs note that the Court ruled on several affirmative defenses in the context of defendants' motion for summary judgment. (Doc.

14

89-1, at 8). It does not follow, however, that the Court could or should rule on affirmative defenses in plaintiffs' motion. (Doc. 79). On defendants' motion for summary judgment (Doc. 80), defendants could prevail if it either showed that no reasonable jury could find substantial similarity between the Post and the Subject Photograph sufficient to show copyright infringement *or* showed that no reasonable jury would deny any of the affirmative defenses. Because either showing was sufficient to grant summary judgment, the findings on affirmative defenses could change the analysis. For that reason, when the Court addressed defendants' motion for summary judgment, it both denied substantial similarity and denied the applicability of the defenses. (Doc. 86, 14–31).

Conversely, for plaintiff to prevail on summary judgment as a matter of law, the Court had to find that no reasonable jury would find a lack of substantial similarity, *and* that no reasonable jury would find any of the affirmative defenses applied. Because the Court found that a reasonable jury could find no substantial similarity sufficient to show copyright infringement, (Doc. 86, at 12–13), plaintiffs could not succeed on their motion even if no reasonable jury could find any of the affirmative defenses applied. Therefore, the Court did not reach the affirmative defenses in the context of plaintiffs' own claim. (Doc. 86, at 13 & n.1). It maintains that decision.

Therefore, the Court **denies** plaintiffs' motion for reconsideration on this issue, and maintains its **denial** of plaintiffs' motion for summary judgment of copyright infringement. (Doc. 86).[4]

---

[4] Again, because the Court does not grant summary judgment that the Post is substantially similar to the Subject Photograph, it does not reach plaintiffs' arguments that defendants' affirmative defenses fail. (Doc. 79-1, at 12–16). *See Teter*, 723 F. Supp. 2d at 1146. Similarly, it does not reach the arguments in defendants' resistance that concern defendant King's personal liability, nor the arguments that concern "unclean hands." (Doc. 83, at 4–5).

15

## IV.  CONCLUSION

For these reasons, the Court **grants-in-part** and **denies-in-part** plaintiffs' motion for reconsideration.  (Doc. 89).  As a result, the Court now **denies** defendants' motion for summary judgment against defendant King (Doc. 80), and Count I is **reinstated** against defendant King.  The Court also **denies as moot** defendants' motion to strike plaintiffs' request for leave to file their proposed Second Amended Complaint.  (Doc. 93).

**IT IS SO ORDERED** this 15th day of September, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

16